## Siddall, Appellant, *v.* Philadelphia.

*Road law—Location of street—Damages for vacation—Permissive railroad crossing.*

Where a street is laid out upon a city plan up to the line of a railroad upon each side, but not across the right of way, and it appears that there was a permissive crossing to the public by the railroad company, the vacation of the portion of the street on one side of the railroad will not entitle the owners of property abutting on the portion of the street on the other side of the railroad to recover damages for such vacation; and this is especially so where there is no evidence to

show that the crossing on the vacated side joined any well-defined road which at any time corresponded with the plotted lines of the street on that side.

Argued March 25, 1909. Appeal, No. 5, Jan. T., 1909, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1904, No. 4,453, for defendant non obstante veredicto in case of Joseph H. Siddall, Jr., *v.* City of Philadelphia. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Appeal from award of jurors. Before McMICHAEL, P. J.

At the trial the jury returned a verdict in favor of plaintiff for $2,000.

Subsequently on a motion for judgment for defendant non obstante veredicto FERGUSON, J., filed the following opinion:

The claim in this case is based upon the act of the municipal authorities in striking from the city plan Ruscomb street from the east line of the Philadelphia, Germantown and Norristown Railroad eastward to Twentieth street. This act of the municipal authorities was taken in 1902. Ruscomb street east of the railroad had existed upon the city plan from 1886, and in that year Charles W. Henry, the owner of the soil over which the street was plotted, dedicated the soil of the street within the plotted lines to the city of Philadelphia for public use and the street was graded down to Twentieth street. Previous to 1886 Ruscomb street east of the railroad did not exist officially on the plans of the city of Philadelphia from 1877. Prior to 1877 upon several plans Ruscomb street was on the city plan, but in different positions, the variation between the location of the street on these plans running as high as eighty-four feet.

West of the railroad Ruscomb street had existed for a great many years, and was physically opened and houses erected thereon, and the claim for damages is made on behalf of the owner of property on Ruscomb street west of the railroad by reason of the change in the city plan in 1902, striking from the plan Ruscomb street east of the railroad.

The trial judge, in his instructions to the jury, pointed out to them that as a matter of law there could be no claim for damages against the city by reason of this change in the plan so far as it affected the properties west of the railroad, unless they could find from the evidence that the connecting link across the railroad was established as a public use, for if the public had no legal right to cross the right of way of the railroad at the point involved, it would follow that any damage which the property owners west of the railroad suffered by reason of the striking of the street from the plan would not be different from that of the public at large. It was sought to be shown that the public had a right to cross the railroad at this point. Evidence of several witnesses was heard, which was to the effect that from about 1875 there had always been a way through Ruscomb street and across the railroad to Twentieth Street. The street was never paved on either side of the railroad, and while on the west side the line of the street was clearly marked on the south line, to the east of the railroad its location was not clearly defined. The witnesses testified that Ruscomb Street was a well traversed thoroughfare across the railroad at this point, and while some of them thought the crossing over the railroad was exactly in line with the actual lines of the street west of the railroad they were not certain, and the plaintiff, Siddall, admitted it was at the north line of the street. The crossing itself was planking laid between the tracks. The station on the railroad at the present time exists on the west side of the right of way. There was evidence that formerly the station existed on the east side of the railroad. There was evidence on the part of the defendant to the effect that the planking was at the station, was laid down and maintained by the railroad at its own expense; and that the crossing of the railroad did not correspond with the plotted lines of Ruscomb street either east or west of the railroad, but was north of those lines, and that the driveway of Ruscomb street west of the railroad proceeded almost to the line of the right of way when it curved to the north to the crossing, and on the east side it curved to the south to the lines of Ruscomb street again.

We are of opinion that the learned trial judge was entirely accurate in his statement that there could be no recovery unless there was a public way across the right of way of the railroad at this point connecting Ruscomb street on the east and west sides of the railroad, but we think the evidence was not sufficient to sustain a finding that there was a public way across the railroad which could be held to be in law a public street. It is true there was evidence that there was a crossing which was used by the public for a number of years, but to establish a way by prescription it has always been held that the evidence must show not only that there was a user, but that that user was hostile and adverse and under a claim of right. There must be a user without consent, or municipal action looking toward the establishment of a public way. There was no evidence of any municipal action with this end in view. The plotting of a street across the right of way of a railroad, while it is not in any sense binding upon the municipality, may be taken as an indication of an intention to lay out in the future a street across the right of way. No such plotting was made by the municipality in this case. When a street crosses such a right of way and has been used by the public for a long period of years as an open street, and the crossing is paved or maintained in a condition for a crossing of the tracks by the municipality, such paving may be construed to be municipal action consistent with the existence of a public street or of acquiescence on the part of the railroad and an intention on its part to dedicate to public use. There was no evidence in this case that the crossing was maintained by the municipality, and the only evidence on the subject was to the effect that the crossing was maintained by the railroad company itself.

We have, therefore, upon the part of the plaintiff, evidence only to the effect of the user. The evidence as to its adverse and hostile character was not sufficient to sustain a finding that a public way or street existed. If the railroad company, for the purpose of making a convenient mode of access to its station on the east side of the railroad for the public coming from the west side, chose to maintain a crossing there at its

own expense, the mere fact that the public used it generally for other purposes would not estop the railroad company from exercising its right at any time in its discretion to abolish the crossing, and, subsequently, when the station was established on the west side of the railroad, if, for the convenience of the public to the east of the railroad, it continued the maintenance of that crossing, the same rule would apply. In Esling v. Williams, 10 Pa. 126, it was held: "A user will not give title to the public when it is under leave or favor and by permission and at the will of the owner. The presumption may be repelled by evidence, which accounts for the possession or user, without resorting to a title by grant or otherwise." In Griffin's Appeal, 109 Pa. 150, it was held: "Long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive, and always yields to contrary proof of a satisfactory character." In Root v. Com., 98 Pa. 170, the illustration is given of the use by the public of ground in front of a warehouse extending to the river, and it was pointed out that though the owner permitted the public to use that ground continuously, it gave the public no right against the will of the owner, because the use was not adverse to him but was by his consent, and it was not exclusively used by the public, but in common with the owner himself for travel and other purposes. It was also pointed out that no length of time during which the property was so used could deprive the owner of his title or give the community the right to abate the owner's fences over the property as a nuisance on the ground that the public had acquired a legal easement. In the same case it was pointed out if the owner invited the public to use the way, he would not be likely to protest against the use and prevent it, and if he permitted the use he naturally would not object to it.

The evidence, therefore, as has been stated, only amounted to proof of the use for a period over twenty-one years. Nothing in the nature of a street existed; the crossing consisted only of planking suitable for wagons, with no sidewalks. The railroad company, however, has produced evidence to the effect that the crossing was maintained in a condition for travel by the railroad company itself. There was no evidence of any

character of municipal action with regard to the crossing that could be taken to be adverse. No evidence was offered in rebuttal to contradict this evidence as to the maintenance of the crossing by the railroad company, and, as was said in Griffin's Appeal, 109 Pa. 150, the existence as to the use of the street to establish the easement must yield to the definite and contradictory proof showing that the use was permissive only: Penna. R. R. Co. v. Freeport Borough, 138 Pa. 91.

But for another reason we are of opinion the claim of the plaintiff cannot be sustained. There was no evidence to show that the eastern side of the crossing over the railroad joined a well-defined road which at any time corresponded with the plotted lines of Ruscomb street on that side. The plans showed that Ruscomb street on that side of the railroad had been changed and was located at several places and ran at different angles. If the actual roadway to the east of the railroad as used by the public was always in the same place, and there was no change as to its location, it must necessarily have been at times during the period of twenty-one years that the public traveled over private property, for the evidence shows that from 1877 to 1886 no street existed on the plan. There is no contention here that a prescriptive right was obtained over this private property, and it must be said that, so far as the evidence is concerned, when we take into consideration the fact that the claim for damages is based upon the vacating of a street laid down definitely upon the city plan, that the evidence fails to show that the crossing corresponded at any time with the lines of the street. The evidence is indefinite and vague and lacking in those qualities of accuracy which the law requires in such cases. Even though the evidence were positive and clear, showing an adverse and continued user of a crossing sufficient to make it a public way, it is not sufficient to support a finding that that way at any time met the lines of the street on the east side as they were plotted on the plan. It must not be forgotten that the claim is based upon the vacation of a street on the east side of the railroad, and, in order to establish a claim peculiar to the present plaintiffs, the connection between the west side and the east side

must be legally established. In our opinion, the evidence fails to establish that connection.

Another matter might be referred to, which throws light upon the physical conditions, although of no weight in arriving at the conclusion of the court.

The logic of a verdict for plaintiff in this case would be that the public had acquired an easement across the right of way of the railroad without formal grant, although the railroad was not a party to the proceeding.

There was evidence to the effect that the railroad company, at or about the time of the action of the municipal authorities, erected a high board fence along both sides of its right of way, and removed the planking. Had appropriate action been taken against the railroad for maintaining a nuisance in these fences, or in equity for their removal, the right of the public, if any existed, would doubtless have been established. The erection of these fences undoubtedly prevented the public from passing across the railroad at this point, and it was this fact, if anything, which caused the actual damage to the claimants. Instead, however, of taking action to require the removal of these fences and to restore the crossing which might have established the easement across the right of way, if one existed, the claimant has sought to hold the municipality in damages for closing a street on the east side of that right of way. With the fences existing, it was certainly immaterial, so far as the claimant was concerned, whether the city maintained Ruscomb street on the city plan on the east side or not; it had lost its peculiar value to him.

The motion for judgment for defendant non obstante veredicto is granted.

We are also of opinion that the verdict was excessive and upon that ground a new trial should be granted, but in view of our ruling upon the motion for judgment non obstante veredicto it is unnecessary to further express our views upon that question or to now dispose of that motion.

*Error assigned* among others was in entering judgment for defendant non obstante veredicto.

*Samuel H. Kirkpatrick*, with him *Joseph G. Lester*, for appellant.—The evidence was sufficient to establish the crossing as a public highway: Pittsburg, Fort Wayne, etc., Ry. Co. v. Dunn, 56 Pa. 280; Waters v. Philadelphia, 208 Pa. 189; Phila., Wilmington, etc., R. R. Co. v. Philadelphia, 9 Phila. 563; Com. v. Llewellyn, 14 Pa. Superior Ct. 214; Com. v. P. & R. R. R. Co., 135 Pa. 256.

*John Lamb*, with him *William Gray Knowles*, assistant city solicitor, and *J. Howard Gendell*, city solicitor, for appellee.— There is no doubt that a crossing existed there for more than twenty-one years, but there was no evidence in the case of an adverse user; on the contrary, all the evidence was that the user was permissive only, and that the crossing was kept in repair by the railroad company: Weimer on Pennsylvania Railroad Law, 121; Pennsylvania Railroad Co. v. Freeport Borough, 138 Pa. 91; Reading Co. v. Seip, 30 Pa. Superior Ct. 330; Stewart's App., 56 Pa. 413; Barker v. Hartman Steel Co., 129 Pa. 551; Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Pennsylvania Schuylkill Valley R. R. Co. v. Reading Paper Mills, 149 Pa. 18; Hasson v. Oil Creek & Allegheny River R. R. Co., 8 Phila. 556.

PER CURIAM, May 20, 1909:

The judgment is affirmed on the opinion of the court below.